We call the next matter of United States of America v. Sean B. Shaw. Mr. Pickett. Yes. Good morning, your honors. It's a great honor and pleasure to be here. Welcome. Robert Pickett is my name, and I'm the substituted counsel for Mr. Shaw. I did not handle the original trial. So I'm delighted to be here this morning to confer with you about this particular case. I know you've read our extensive briefs that we've provided to you here that lay out what all the issues are. This is a situation where Mr. Shaw was, as you know, a security guard, you can call it, at the Essex County facility. And he had, it is alleged, an encounter with one of the... He was convicted of an encounter. So let me ask you this. Yes, he was. How should the charge have looked like? What would have been the appropriate charge from the district court defining force in this case? Defining force in this case... That's what we're here to talk about. Yes, the appropriate charge would have been probably just, if I were managing handling the case, I would have focused on his conduct in entering her jail cell at the time and engaging in what I could classify as consensual sex. The part of the charge that said restraint alone can constitute sufficient force. Would you take issue with that part of the charge? I would take issue with that. All the cases that have looked at this, though, they're very, very clear that restraint alone can constitute sufficient force under the statute. Well, in all due respect, Judge, I would differ because I think that the number of circuit courts have taken a different posture and it would look like this. In order to... Which courts are you referring to? I'm talking about the, let me see, the Johnston case as well as U.S. versus HLB and U.S. versus Fulton where there was a physical activity by the person charged either pushing and the other party is screaming in resistance. There were a combination of factors. Yes. Certainly in HB there were. Yes. There was restraint combined with holding the leg, covering the mouth, a number of things. That's correct. That combination. And in this case, there was no such combination in the way my client, Mr. Shaw, handled the matter back when he was arrested. Was it the testimony of the victim that Mr. Shaw pressed her chest at some point and that he then laid down on top of her? And isn't there also evidence in the record showing a disparity in size and stature? Well, she was questioned quite consecutively and pointedly about that, and she made absolutely no complaints at all with respect to how she was handled, how she was managed, and how she... Sir, let me ask you. I'm reading from the transcript, and she said, and this is at 331 in the appendix, I was awoken to Officer Shaw taking off my underwear and sweatpants. That's some force involved there, you would agree? This is what she said. Okay. Then she said a few lines later, I said, stop, and asked him to stop. I said, stop. That's all I could get at at the time. She then says, he forced himself on me, he had a hand on my chest, and he penetrated my vagina with his hand. Is that force? In the context of Mr. Shaw's testimony, he said that he was... I'm going to answer it that way, because then you get into credibility, and on review we have to look at the evidence in the favor, and the evidence in the favor was in the various parts of the government. Oh. So if you then tell us to look at testimony that we can't really look at because it forgets our standard of review, that doesn't help us. So just answer it in terms of the way that, to have the stripper answer the question. Okay. I mean, one, unfortunately, could look at it that way, but given... Don't we have to? We kind of have to look at it that way, don't we? In all due respect, Judge, I don't think you have to. I think you have to look at the entire context of what happened here. The context as described by whom? As described by the victim as well as Mr. Shaw. Why? Given what the law is very, very clear in terms of how we review a conviction on appeal, why would we have to do that? Why wouldn't we just, in fact, don't we have to do exactly the opposite? And that's why that question seems to go directly to the issue here. If the placing of the hand on the chest, forget everything else, the placing of the hand on the chest, why wouldn't that in and of itself be enough to satisfy Section 8-1? Because testimony, in all due respect, Judge, the testimony of the alleged victim was clear in suggesting that she was not offended by that touching. In fact, it was almost like a romantic kind of touching from her point of view, from her perspective. If you define romance in this situation, my gosh, we need to have a serious talk. No, but I'm not talking about romance with a capital R, Judge. I'm talking about with a small r only because... I think it's even difficult reaching it with lower case. Let me pursue something here. We're talking about Section 2241 here, right? Yes. And will you agree with me that since 1990, courts have interpreted the use of the word force, the force element, we should say, of 2241, as satisfied by a showing of the use of physical force sufficient to overcome, restrain, or injure a person. Would you agree that that's been a commonly accepted definition of the element? Yes, and I'll go even one step further. Circuit courts have always suggested that the touching and the use of force must be meaningful, not something casual or oblique, if you will. Well, but since you've agreed with me that that language has been commonly accepted, and among other places it has been used by the Second Circuit in the Lauck decision, we have not, as has been recognized, had occasion to actually define force in the context of this statute. But don't you have a problem with the fact that trial counsel went along with the definition that the district court gave? Hasn't this issue been weighed? I would argue, respectfully, Judge, I would argue no, that it has not been weighed. I'm sure you don't want it to be weighed, and remind me, I may be incorrect about this, was this language submitted, in fact, by both sides, or simply by the prosecution, by the government, and there was no objection from trial counsel? I think that it's the latter, Judge. There was no objection put forth by trial counsel during that period of time. I think that... So under what standard are we to look at this assignment of error in the instructions to the jury? I would think, in a de novo sense, you would have the opportunity to take a look at the... Don't we have to look at it under plain error? I would argue, and a lot of attorneys... But this is what the law requires us to do, as opposed to what the law has to do. I understand, but the short answer has to be yes. Let me ask this, because you were talking earlier about, I think you said meaningful force, and the Chief mentioned 1990. From 1990, the courts have agreed, basically, on the approach to force in this contract. Yes. And in Lewis v. Locke, L-A-U-C-K, which is a 1992 circuit case, the court said this. Contrary to Locke's suggestion, which is similar to your suggestion here, that the distinction Congress drew between the felony in Section 2244A1 and the misdemeanor in Section 2244B is the degree of force used, which is, I think, what you're arguing, the distinction actually is whether force is used at all. If you were to adopt that, and it seems to be consistent with all of the case law, certainly after that and some of it before then, going back to the Supreme Court's decision in the mills back in the 1800s, this gets us back to the initial question. Why wouldn't the placing of the hand on the chest by itself be sufficient, unless we're talking about a consensual encounter, which you're arguing that the jury clearly rejected? Exactly. Exactly, Judge. I think the difference and the distinction would have to be how the victim viewed the touching. And there is numerous parts of the trial transcript where the alleged victim did not suggest, never suggested that she was offended. She said stop. Did she say stop? She said stop. Yes, she did. But again, saying stop may not necessarily be an offensive word. It could be a suggestive word. It's a demand. It's more than a suggestion. She's saying stop. Yeah, but in the context of the community that she probably came out of, using the word stop may not necessarily mean stop. You're arguing no means yes? Is that what you're arguing? Isn't that suggestion precisely what Congress in 1990 and its more recent iterations of these statutes have tried to remove from a common law history where there was some suggestion that stop didn't mean stop, or at least that consent or a demonstration of consent could be inferred from the mere failure to say anything in the way of objection. I mean, isn't this entirely contrary to statutory intent as well as the recent history involving rape generally and sexual offenses under the federal legal system? Under the scenario that you've developed, the answer would be yes. However, again, we have to look at what was happening that evening. If you're honest, don't mind, it's clear that in her testimony at various points, she said when asked whether she felt offended by the touch, her response was no. Again, this gets back to her interpretation of what does stop mean, and I'm not suggesting it to be funny at all in this context. But for her to say stop, it probably within the context of her culture and the community, stop was not meaning stop at that point. It was a suggestion, listen, I'm dealing with you, I'm going to play with you for a few moments, but I want to go forward. That's how I interpret it. And maybe I'm absolutely dreaming or I'm wrong in this context. Maybe you're mistaken. But the situation here is, as you've all read the briefs and so forth, there are a number of other issues besides the use of force, but the use of force is critical only because it gets the prosecution to the aggravated sex charge and it gives Mr. Shaw an opportunity to spend a much longer period of time in jail if the matter was not otherwise labeled as aggravated. And it's very clear that in this context there was no screaming associated with stop. There was no resistance associated with the young lady during the period of time when she said stop. There was no covering of the mouth by the defendant, and there were no blows to her body at all. And it's very clear to me, coming in as the substitute counsel, that the defendant should have been charged with perhaps even assault, but not necessarily aggravated sexual abuse in this context. So your suggestion that there's enough evidence here to convict somebody of assault, but not enough evidence to satisfy the force element? In all due respect, Judge, yes. I know it sounds like I'm being an advocate here. You are an advocate. I understand that. Yes. But in the context of what was said during that evening and that night and what subsequent testimony revealed from the alleged victim, she was, and I say this with all due respect to women, she was pleasantly perhaps not surprised, but she accepted his maneuver and his approach, unfortunately. But it happens in some communities like that. I don't know which community you're from, Mr. Freeman. I have to ask. My guess is it's the same community I'm from, maybe in a different state. And, man, we hang in different places, man. I don't understand how you can stand up there and say, I know you're acting as an advocate, but keep it within the realm of reality. Are you referring by use of community, just out of curiosity, to the prison setting? Is that your reference, or are you referring to something else? I was referring to prison communities. She was in jail for having violated a law in New Jersey, in Essex County. And so she was, within that context, saying stop may not necessarily mean stop. And, in fact, saying stop would. . . We have the prisons. I know there's a separate vocabulary. Yes, sir. But in that context, you're saying that stop means, oh, hey, I'm done with this. Go ahead. That's what you're arguing. But you understand, even if that argument approached the realm of sanity, it would be an argument that we couldn't accept given our standards of review. Do you understand that? I do understand that. But I'm just trying to give you the context in which she articulated that word, stop. All right. Thank you, Mr. Pickett. I've forgotten. Did you reserve time for a while? I would like to reserve two minutes, if at all possible. All right. I don't remember that. . . Again, I want to thank you for your time. And I'm coming in sort of at the last minute. It's always difficult not having been there to try the case. I thank all of you. Thank you very much. Thank you, Mr. Pickett. Ms. Grace? Good morning. May it please the Court, Desiree Grace on behalf of the United States. Excuse me. The entire staff in the office is like, the woman will be back. Is it because they don't trust you? Are they trying to learn from you? Or can you tell? They just really like me. Okay. All right. I'd like to start with Chief Judge Smith's point about this being invited error. The government submitted in its supplemental appendix the party submissions to the district court with respect to the jury instruction. That's on supplemental appendix 74 to 75. And the definition that Judge McKee brought up with respect to restraint alone being sufficient was in the defendant's submission as his request in charge. And so under that standard of review, the Court is looking at that for a plain error. Let me ask this. We're looking at what the Court told the jury. It didn't say who was ahead. It took to say the trial jury was. Restraint alone can constitute sufficient force, and that's where we're back to what you just said that I had mentioned from the law opinion. But then the judgment I was saying, the disparity and coercion, this is all under the definition of aggregated sexual abuse, not sexual abuse. We understand the disparity and coercive power and size between the defendant and D.S. are factors the jury may consider when determining whether force was utilized. Why isn't that conflating whether or not there's consent with the issue of whether or not there's force? Well, for two reasons. First, the jury was never instructed that with respect to the threshold finding of a violation of the right to bodily integrity that all it had to find was a disparity in size or coercive power. The same is true for the aggregated sexual abuse. The jury had to find force. The jury was instructed that these were factors it can consider, and that was supported by the law. This disparity in size, it really is no more than evidentiary support that would contribute to a finding of force, correct? Well, that's certainly true. It's not an element of nor even a necessary requisite of force. Not at all. Force was the required element. And if the jury had to find force in order to determine what force was, that's my concern. That's why I asked you that question. Did the charge allow them to conclude that the factors that would establish coercion in the absence of consent also constituted force? Because the court said these are factors you can consider in determining whether or not force was utilized. You can strike that last sentence. There's no issue here. But when you add in the last sentence, the disparity in coercive power and size are factors that the jury may consider when determining whether or not force was utilized. Why isn't that the same as saying, if you determine that the disparity in coercive power and size negated any consent being given, then the court is also saying you can look to the same absence of consent to determine if force was used. Well, you're not looking to the absence of consent to determine whether force was used. As we said, the disparity in coercive power and size are factors the jury may consider when determining whether force was utilized. And your best argument on that might be a harmless error because the jury obviously did not accept what the defendant testified to. They did accept her version of the story. But that part of the charge does seem to conflate the two. Well, no, for two reasons. One, if you look at it in the context of what was required for these two different determinations, there are additional elements required. And so it's not... Well, that's where you put the rabbit in the hat, as the Chief said earlier, in a different context. If you look at this as there having to be two different determinations, then you're right. But the jury is being told, why don't you look to get the additional determination? And what it's told it can look to doesn't have to, but it can look to, the disparity in coercive power and size, which is really something that goes, may go to force, but it really goes to whether or not there's been consent. It's coercion. Not necessarily, Your Honor. I would say not at all. Because if you're looking at the threshold determination of whether the right to bodily integrity was violated, all that's required is an unwanted sexual contact that's sufficiently egregious so as to shock the conscience. This is a spectrum of harm. So the same factors, the same conduct is going to violate the threshold of misdemeanor violation and also violate the aggravated sexual abuse enhanced penalty. And the disparity in size and coercive power is certainly relevant to whether the force was sufficient to restrain the victim. If the defendant... The way you put two things, you said force was sufficient to restrain. I think we agree, although Mr. Pickett may not agree, that if restraint comes into play, and that was definitely here, then you've got the force. So take restraint out of that and then make the argument you're making to me. Forget restraint for a second. Well, as a threshold point, I don't know why we would take restraint out of the equation. Restraint has always been in the definition. It's in the legislative history underlying the Sexual Abuse Act of 1986. This is your argument. I'm looking at the coercion. If you look at whether or not... If you're arguing to me that you can look at coercion to determine whether or not there's restraint, I don't disprove that necessarily. But the minute you put restraint into it... Well, you're saying restraint doesn't have to be a physical restraint. It can be a psychological restraint. Are you saying that would be sufficient to go through with force? No, I'm saying physical force sufficient to restrain the victim. And in that instance, a disparity in size and coercive power is certainly relevant to that finding. If the defendant is 5'2", 115 pounds, and the victim is 6'1", 195 pounds, then these factors are relevant to determining whether an offender being on top of a victim was sufficient force to restrain that victim from being able to escape the IWD. I've had a situation where the guard comes in. Let's say he was cut from a professional football team. He's gigantic. He's 6'9". He weighs 50 pounds. And the victim is very, very slight. And he says that he's going to have sex with her. She does not resist. And she says, well, I didn't resist because I know what you can do to me. I've got to live in that place. And this guy's the guard. So I'm not going to physically resist. I can't physically resist. He's too strong. But I did tell him to stop. He ignored that. And then he proceeded to have sex with me, which I told him I didn't want. And let's assume there's no restraint there. I don't know how you do that, but let's assume it's standing. Now, the restraint element is gone because the big person is on top of the small person. There's clearly coercion. Where does the force come in there? Or does the force come in there? Well, I'm not hypothetical. I don't know that there would be force unless the victim is testifying that she is physically unable to escape the sexual contact. In that instance, there would be sufficient force. The statute contemplates a low threshold of force in order to violate Section 2241. I think any force is going to be sufficient. Any force. And going back to where the panel started with Mr. Pickett's argument, when he had his hand on her chest and there was just digital penetration, even before there was sexual intercourse, after she said no, that alone ends the analysis here. Section 2246 defines sexual acts. I'm just troubled by that last sentence. Maybe I'm not making my point very clearly or my concern very clearly. But, again, it seems to me that maybe the best argument to respond to that is just harmless error because the jury clearly concluded that more than the disparity in course of power and size was at issue here. There was physical restraint. There was the hand on the chest, according to the victim, which the jury accepted. But that last sentence is problematic to me. The jury instruction here, the sentence that Your Honor finds problematic, is actually a watered-down version of what four other circuit courts of appeals have approved. The Fourth Circuit, Fifth Circuit, Eighth Circuit, and Tenth Circuit have all said that force can be implied or inferred from disparity in size or course of power. And the Eighth Circuit actually – I'm sorry, Judge. No, go ahead. Finish. The Eighth Circuit in United States v. Webb went so far as to suggest that disparity in size alone could satisfy the force requirement. You're not asking us to do that. There's no occasion for us to do that, right? That's not before the court. So we don't have a pattern instruction. The Third Circuit does not have a pattern instruction, and there's really no precedential opinions defining force or instructing district court judges how to charge. What should the charge sound like? The charge should be exactly what was delivered in this case. Including the sentence Judge McKee's troubled about? Yes, Your Honor. First of all, this case dealt with Section 242 and looking to Section 2241 in order to interpret the enhanced penalty. But if you're looking at Section 2241 in isolation, which a model jury charge for that statute would apply to, you don't have this violation of bodily integrity next to a finding of force in Section 2241. So in looking at Section 2241 in isolation, there certainly wouldn't be an issue with conflating two different requirements. The closest analog I could find was the definition of force in the robbery statute. Why not charge consistent with that language? And consider whether a defendant used or threatened to use force, violence, or fear. You should give those words their common, ordinary meaning and understand them as you normally would. That's how we charge when you talk about Hobbs Act robberies and force. Why not apply that language or use that language in this context? Because the Sexual Abuse Act of 1986 had a different objective. And the definition that courts have universally adopted that includes restraint, that comes directly from the House report. It's footnote 54A on page 14 of that report. And Congress was attempting to negate several things that had happened in the sexual abuse context. One, the focus on the victim's conduct, which unfortunately is an issue in this case as well. This idea that a failure to resist or a failure to be more aggressive in fighting off a rape is somehow indicative of a lack of force. And in this particular context, Congress negated that. They said that force that is sufficient under this statute is that which is sufficient to overcome, restrain, or injure a person. And so whatever Congress set forth in the robbery statute didn't have that objective in mind. That's not Congress. That's the Third Circuit. I'm sorry. Oh, that's the model charge. It's a model instruction. Well, in this instance, I would say that we should follow what all the other courts of appeals to address the issue have done, and that is to look at what Congress's objective was in enacting Section 2241. The two parts of 2241, and that's where you came back to one, you've got to establish how you define consent in a way that is realistic and fits with real-world circumstances and recognizes the fact that people are going to appeal, they're not free to consent in situations where from the outside, looking in, some people might say, well, why didn't she put up more of a struggle? Why didn't she resist? Therefore, she consented. I guess that's kind of the tacky road that Mr. Pick is walking down. So Congress was clearly trying to deal with that, and they did by looking at disparity in size, force of power. The prison sentence in a lot of these cases come out of the prison context. It's endemic for that situation. By definition, there's no ability on the part of the inmate to resist. But that's different. That's the misdemeanor offense, which is different from the much more serious, aggravated assault where force, however slight, is implied. So what you're saying in response to Judge Strickler's question doesn't really go to that. Congress was clearly trying to create a situation where they could create a statute which would penalize rape without putting an unnecessary burden on the victim to subject themselves to coercion or physical force or injury by resisting it so far that they would, in fact, subject themselves to that. That's different from a situation where you've got aggravated assault, and that's why I come back to that last sentence. And you know, I've articulated that concern as clearly as I could have, and I think you understand what I'm trying to get at. Section 42 sets out a violation of a deprivation of civil rights, and the misdemeanor violation requires just an unwanted sexual contact. It doesn't require a sexual act in the way that Section 2241's enhanced penalty, by reference, does. And that is a big distinction in itself because if you have a corrections officer, in this instance, had Shaw entered her cell and simply aggressively groped her, that would have constituted a misdemeanor violation. But the fact that this progressed to the point of penetration is what brings us into the aggravated sexual abuse realm. You can get aggravated sexual abuse without having penis penetration, without the digital penetration. Digital penetration, but there is penetration of some sort. Sexual act is defined in Section 2246, and that is a higher standard than an unwanted sexual contact that would satisfy the misdemeanor offense in Section 242. Moreover, the force requirement that comes from Section 2241 is not the equivalent of a lack of consent. Section 2241 intentionally does not have a consent requirement. And the Eighth Circuit, actually just four weeks ago, opined on this distinction between consent and Section 2241, saying that while consent is not an element, it's certainly relevant to the calculus because, on the one hand, it's a defense. If the defendant is able to convince a jury that it was a consensual act, then the causal requirement of Section 2241 is not met. And the flip side of that... Well, that's a reasonable doubt to raise. The defendant wouldn't have to convince the jury of that. It's a testimony that's just a reasonable doubt. Yes, that's correct. And so the flip side of that, which the Eighth Circuit went on to say, is that the use of force necessarily indicates a lack of consent. And so it's really not a surprise that the same factors, the same evidence, the same conduct... I think the issue here is what is force? It's not a question of the use of force. That's law. That's what's at risk. But the issue is what is that force? What does it look like? How do you define it? That's the problem. Particularly with respect to considering disparity in size and course of power? In general, just with the statute, I'm saying that's the problem. It's hard to define force. And what we're having some tension about is whether or not those elements which go to establishing the absence of consent also allow the jury in of themselves. That's not here. I understand that. In of themselves, whether or not that would allow the jury to also find force. The question is, is the Pennsylvania theft and poaching however slight language? Well, perhaps a hypothetical in the prison context to demonstrate this distinction. If a corrections officer comes in to an inmate and he says to her, I will take away your privileges for visitation and for telephone calls, I'm sorry, I see it in my time, thank you. If he can take away these privileges that make her life better and says, if you do not have sex with me, I will take away these privileges, and she then consents to that sex. Now, that's a coerced consent in the sense that it won't be freely and voluntarily given and it will be a misdemeanor violation under Section 242, but that would not entail the requisite force to bring this to an aggravated sexual abuse. To get on top of her, that would amount to subsection 2, wouldn't it? Not if she's actually consenting to the sex under the coercion. Only in the situation where someone, quote, consents, close quote, would that then become irrelevant, the restraint then falls aside. That's correct. Because restraint is no longer necessary. You've already established that, but you try to establish my restraint by using the coercion. That's what you're arguing. That's correct. All right. Thank you. Thank you. We'll give you two minutes of rebuttal. Judge, I'll be real quick just on that last point. I think it's a very important point that all of you were making inquiries about. That's one of our requests for reversal because what the judge did in a very sophisticated manner, and I guess that there was some doubt whether or not placing the hand on her chest constituted force, the jury charge in and of itself wrongfully allowed the jury to equate force with non-consent. And clearly if you assume the facts as has been articulated here, there was perhaps a non-consent view the judge took, and the jury had the opportunity of taking a look at all the facts, equated that non-consent with the appropriate force, and which brought us to the aggravated sexual assault. I will also ask your honors to take a look. Well, it didn't harm the story. That's what I was trying to get into with Ms. Grace. Given what the jury clearly concluded, given the language of that charge, and let's assume that we would accept the point you're making as to that language, what difference would it make? Given the totality of the testimony, what the jury obviously said, they clearly did not buy that this was consent, that the defense was consent. The defense was not like I wasn't even there, this didn't happen. The defense was consent, right? Well, from my point of view, again, I was not trial counsel, but from my point of view, I'm sorry. But you're stuck with the record, and the record was. That's right, that's right. But the jury charge gave the jury an easy way out. Instead of taking a look at the totality of the circumstances, whether or not there was a real force of the defendant putting his hands over her mouth, the defendant Why would it have to be her mouth? I mean, that just silences her. Why wouldn't the hand on the chest be sufficient? If you concede that hand on the mouth is sufficient force, I don't see how you get an idea that hands on the chest would not be sufficient force. Well, what I'm suggesting, Judge, putting the hands on the mouth is to stop her from notifying other people about the fact that she is being harmed. It doesn't necessarily reflect physical force. But the jury charge that the judge developed and created makes it easier in the event that there is non-consent, that you can assume force. I just wanted to raise that with you and for your honors to take that under consideration, as well as our other requests for reversal and errors that we cite in our brief. And I thank you for the opportunity. Thank you very much. Thank you very much, Mr. Pickett. Thank you, Ms. Grace. We'll take the matter under advisement, and we will ask the clerk to adjourn the proceedings. The court stands adjourned until September 27th at 9.30 a.m.